IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT ROTHMAN, )
)
Plaintiff, )
)
vs. ) Case No.
) 8:23-cv-2969
BANK OF AMERICA CORPORATION; BANK OF )
AMERICA, NATIONAL ASSOCIATION; )
MERRILL LYNCH, PIERCE, FENNER & SMITH )
INC.; BofA SECURITIES, INC.; and )
U.S. TRUST COMPANY OF DELAWARE, )
)
Defendant. )

CASE MANAGEMENT CONFERENCE
(Digitally recorded and transcribed)
Sam M. Gibbons United States Courthouse
801 North Florida Avenue
Tampa, Florida 33602
JUNE 4, 2026
11:58 a.m.

BEFORE THE HONORABLE NATALIE HIRT ADAMS

UNITED STATES MAGISTRATE JUDGE

SHARON A. MILLER, CSR, RPR, CRR, RMR
Federal Official Court Reporter
Sam M. Gibbons United States Courthouse
801 North Florida Avenue, Room 13A
Tampa, Florida 33602
sharon_miller@flmd.uscourts.gov
813.301.5041

Proceedings recorded by digital recording
Transcript produced by computer-assisted transcription

APPEARANCES

PRESENT ON BEHALF OF THE PLAINTIFF:

BRIAN PATRICK KOPP
DOUGLAS JULES TITUS, JR.
JAMES MELFI
Betrass Kopp, LLC
1408 Westshore Boulevard, Suite 1020
Tampa, Florida 33607
(800)457-2889

RICHARD THOMAS
Henderson, Covington Messenger Newman & Thomas
6 Federal Plaza Central, Suite 1300
Youngtown, OH 44503
(330)744-1148

PRESENT ON BEHALF OF THE DEFENDANTS:

MICHAEL S. HOOKER
Phelps Dunbar, LLP
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602
(813)472-7550

ALLISON EISEN
ENU A. MAINIGI
Williams & Connally, LLP
680 Maine Avenue S.W.
Washington, DC 20025
(202)434-5000

(Court in session at 11:58 a.m.)

THE COURT: Good afternoon, everyone, I think almost. Please call the case.

COURTROOM DEPUTY CLERK: 8:23-cv-2969, Rothman v. Bank of America Corporation, et al.

THE COURT: Thank you. Would Counsel state their appearances starting with Counsel for plaintiffs.

MR. KOPP: Brian Kopp, Your Honor.

MR. TITUS: Doug Titus, Your Honor.

MR. MELFI: James Melfi, Your Honor.

THE COURT: And for the Defense.

MS. MAINIGI: Enu Mainigi, Your Honor.

THE COURT: Good afternoon. Ms. Eisen? One more time, Counsel?

MS. EISEN: We've got Mr. Hooker with us as well. I don't know if his audio is perhaps not functioning.

THE COURT: All right. Hello, everyone. We are here to try to set a scheduling order that addresses the allegations that have been pleaded in the third and now the Fourth Amended Complaint relating to the negligent misrepresentation claim.

I guess I want to start by just laying the land. I've read through all the allegation, and to me it does not seem that the majority of the paragraphs plead information that isn't otherwise pleaded elsewhere or plead things that

are separate and require information beyond contractual interpretations, so I would imagine when plaintiff requested to amend and suggested it was not going to trigger a new enormous discovery effort, that was why is because most cases do not require discovery.

I'll ask plaintiff -- I guess I'll tell you the only pleading that I thought might be eligible for new discovery, but plaintiff can tell me if I'm wrong if I have missed something there, and I have not -- I mean I have not gone word for word back through the Complaint to see if it's otherwise alleged.

In Paragraph 191, plaintiff alleges that McCabe had a unique expertise in evaluation of NFL franchises and accessed financial information pertaining to the franchise Snyder that wasn't available to Rothman.

I don't know if that is otherwise pleaded, so I'll hear from the third parties on that because this sort of unique expertise and access to knowledge. It seems the next paragraph just talk about communications that were or were not made to Rothman so things that he knows, has possession of, would certainly be the keeper of.

Maybe the 192 rely -- the allegation that defendants intentionally concealed, and that is going to come up over and over throughout the new application, so like the intentional concealment facts are perhaps eligible for discovery, perhaps

the failed to exercise reasonable care in document 193. There's all of this stuff about possessed superior knowledge regarding the Release, but that is just contractual language, so to me that didn't appear like something that required additional discovery. So that takes us through the first set of allegations -- sorry -- that was 190 through 198. All the -- on the other ones, again, it's similar language to 125, Defendant acted knowingly and willfully. Right? We're just getting to the intent of Defendant in making certain representations. Then I guess we're wanting the things after there that they think is relevant.

And then, again, the allegations are demands to plaintiff, communication to plaintiff, failed to tell plaintiff. These are all things that do not require additional discovery that I can see.

And then I think looking at 142, Defendant's post-release conduct occurred through the wealth management family office where they provided wealth management's services. I mean, to me it seems like the post-Release conduct is conduct towards Rothman. To me that doesn't necessarily seem like it would require discovery from Defendant. And then 144, used the word concealed again, so we're talking about, you know, whether actions were deliberately made or made with knowledge that they were not wholly forthcoming.

But those were the only allegations I thought in all those paragraphs that may trigger a request for new discovery, essentially just getting to possibly some of the experience associated with one particular person McCabe, if that hasn't already been covered. And then the sort of knowledge or intent of someone discussing with Rothman the meaning of the Release and the liability for the 100 million.

Am I getting that right, or is there another bucket of discovery that plaintiff thinks would be relevant to these new pleadings?

MR. KOPP: No, Your Honor. I think you've summed it up quite succinctly. If you work backwards, as you know from our previous hearings, the John Gaffney letter is the trigger in this. That was the first notice that the bank had ever sent to Mr. Rothman in May of 2025 that it considered itself to be a Snyder-related party.

So we believe we have conducted it. If I can, just to better tee it up, our only request for discovery would be if there's new information provided to us by the bank. We had asked for all communications, all correspondence, all witnesses. I believe attorney Melfi in several discussions with Attorney Eisen, we don't believe there's anything new coming at us in those records, so that's why we said in the beginning we don't think even in our brief there is a universe that hasn't already been discovered. But if the bank has

something new that has not been disclosed to us, our kind of impasse is that we should have the reciprocal right to investigate that information.

So I hope I answered the question, but as we sit here today, we believe, or at least based upon the bank's representation, they've provided the names of all witnesses and all communications in possession of the bank and we've already done that including lawyers that were involved on behalf of Mr. Rothman. So we think the universe is closed unless the bank opens something new up.

THE COURT: Okay. Great. So I guess as far as you're concerned, unless you are surprised, we don't need any more time for discovery. What do the Defendants think they need in discovery? I mean -- Okay. Let me just ask, what do you think you need in discovery based on the new --

MR. MAINIGI: Our discovery that we have already served on plaintiffs falls into two different categories, Your Honor. The first pertains to the release, so Mr. Kopp just represented to the Court that the first time Mr. Rothman was put on notice that the bank considered itself a Snyder-related person and thus within the scope of the Release was when Mr. Gaffney sent Mr. Rothman a letter in May of 2025.

Of course we know this isn't true. The bank has maintained from it's very first motion to dismiss in this matter in early 2024 that it was a Snyder-related person.

Mr. Rothman continued to call on this credit facility after he was aware that the bank considered itself a Snyder-related person.

So the timeline of Mr. Rothman's understanding of that Release is specifically targeted in our interrogatories and our RFAs.

The second category, Your Honor, has to do with the credit facility itself. So Mr. Rothman has made several representations throughout these new allegations that the bank demanded payment on the credit facility and that the bank required him to consolidate this financial instrument.

We have seen no evidence of that. We have seen no evidence of the demand and no evidence of any sort of requirement from the bank, so we need additional information to understand the exact allegations that Mr. Rothman has added to his now Fourth Amended Complaint.

So we have served very targeted discovery. We only have nine additional requests for production, very targeted interrogatories and the series of RFAs that we hope will streamline and limit any additional deposition testimony that may be necessary.

THE COURT: Let me ask you -- let's just take a moment. So the Snyder-related person disclosure, they briefed in their motion to dismiss. They briefed that in 2024. Isn't the bank the custodian of any other notices provided to

Rothman? I mean, is that anything you need from them?

MR. MAINIGI: It's less about notices, Your Honor and more about Mr. Rothman's understanding when he became aware the bank considered itself a Snyder-related person. Any information that he has not yet provided about the -- his understanding of the scope of the Release at the time the settlement agreement and FPA were executed in 2021.

THE COURT: So that's an interrogatory. Those aren't RFPs that you're issuing related to that?

MS. MAINIGI: Yes. I believe those are from our interrogatories and RFAs. Our RFPs, Your Honor, are -- again, I think you're closing the loop on making sure that we have all documents concerning the Release, so we've requested all communications with the bank concerning the Release to the extent Mr. Rothman has any that we do not.

I think the rest of the RFPs are very straightforward and focus primarily on the debt and the debt collection and these specific enumerated alleged negligent misrepresentations in the Fourth Amended Complaint that we have seen no support of.

Again, for example, subparagraph E of paragraph 190 in the Fourth Amended Complaint, Mr. Rothman says that on or about July 29th, Defendants demanded a principal payment. We have no such record of any demand.

In order to defend ourself against this new

allegation, we need to understand what demand he's referring to and we've requested that he produce it.

THE COURT: Okay. Am I correct that on the 27th you served the only remaining discovery you think is required here?

MR. MAINIGI: The only remaining written discovery, yes, Your Honor.

THE COURT: Okay. You are also seeking additional depositions on this issue?

MR. MAINIGI: We haven't yet made a final determination of whether we'll need additional depositions. I think it's likely that we will need to reopen Mr. Rothman's deposition, again, for the same reason I enumerated earlier, that his understanding of the release and the scope of the release is central to this negligent misrepresentation amendment. But we do not anticipate we would need anyone beyond Mr. Rothman, but until we receive responses on the interrogatories and RFAs, we cannot say for certain.

THE COURT: All right. I am not sure looking through this that a significant discovery lift or period is necessary here. I understand that you have already served discovery requests. We've got -- so the proposed deadline just sort of those have passed, so we do not need to set a -- so we do not need to extend it any further except for to bless the May 27th discovery request deadline here, so it sounds

like there would be no additional. I am loath to reopen depositions here. I want to think about that for a minute.

Okay. So I don't think Defendants disagree with putting this on for a discovery deadline. They both said May 29th is fine, but, you know, plaintiffs wanted to say parties. Defendants wanted to say defendants. They were obviously parties, and the only discovery requests served were served on the 27th. That argument doesn't seem to matter.

For new objections, let me get plaintiff's input. Any objection to if I were to make objections due within 10 days? Is there any objection on the part of plaintiff?

MR. KOPP: Your Honor, can you hear me? I'm getting a little bit of background noise on my end, but can you hear me?

THE COURT: Yes. I can hear you, Mr. Kopp.

MR. KOPP: I apologize. That's coming from us. We had it on mute. Your Honor, I just want to make sure obviously if the 10 days starts, and we could even do the objections as soon as 7 days from today, we just didn't know what the order was going to be on reciprocal so we haven't served anything because we don't think we are out of rule or under an order yet.

So from that standpoint, yes, whether it's 7 or 10 days, we can serve our objections. We believe we can provide all responses within 14 days to the discovery that has been

served upon us.

I would just like to clarify one thing that Ms. Eisen said is there is no doubt that the defense has raised the issue of the release by way of motion practice, but motion practice is not evidence. The very first time that the bank itself provided notice outside of a pleading to Mr. Rothman was in May of 2025 by way of a letter from John Gaffney. That is why we believe we have everything, but if we find new information now. As you know a lawyer's statement in a pleading is not evidence. The only notice that ever came from Bank of America came four months after they had collected $99.5 million from Mr. Rothman.

So really the core of their defense is not that they didn't believe themselves to be applicable. Our claim is that they concealed it, and through a course of dealings, they collected a loan that we believe would have been forgiven if you believe their application, and the concealment is if Mr. Gaffney, as staff counsel for the bank, kept that from the private wealth office that was generating email demands for payments of interest and came out of the managed account, we believe there's a closed universe of people there.

So we would ask -- and we have not served anything because we didn't have a basis at this point. But, if the Bank of America defense team provides new names or a new sources of information that have never been provided to it,

that is all we're asking for.

If they will certify to us that they've provided all names that were "in the know" on the Release and all correspondence regarding the release in the Stock Purchase Agreement, we do not perceive any need to issue paper discovery.

THE COURT: Was that already requested in the discovery requests such that --

MR. KOPP: It was --

THE COURT: -- so they've got an obligation to amend. Discovery is closed. Then can you tell us should we be expecting any additional discovery on that?

MR. KOPP: I do not. And then in regards to the deposition, since she says Mr. Rothman, he was deposed for seven hours. They had full knowledge of their thoughts regarding the Release and they did depose him. They presented him with the Release. They presented him with the Stock Purchase Agreement. They were free to ask him any questions regarding those items.

So, we would argue they foreclosed their ability to ask him. They asked him about his advice to counsel. They asked him about his understanding of the Release. We don't believe there's anything that needs to be reopened through Mr. Rothman.

So I just want to make sure you understood that this

is not a new line of questioning by the bank or outside of their existing investigation in this matter or the deposition of Mr. Rothman.

THE COURT: I hear you. Although now they are defending against a new claim that they didn't -- wouldn't have known to prepare for in the original deposition.

Ms. Eisen, can we expect any additional discovery disclosures on the matters that Mr. Kopp mentioned?

MS. EISEN: At this point, Your Honor, I don't believe so. If there are additional documents that the bank may need to use at trial as defenses, of course we'll comply with our discovery obligations to produce those. And we are going back to the well and assuring that we have answered all plaintiff's discovery requests to the extent that they are now extending well into 2024 and 2025 related to this loan.

But, Mr. Kopp is correct, they served discovery requests and I believe July of last year, they requested all documents and communications related to the settlement agreement and to the Stock Purchase Agreement and we have produced all of those communications.

To the extent there's anything outstanding, it would be specifically related to this credit facility that is the subject of the amended claim.

THE COURT: Okay. To the extent that the parties need to update their discovery productions, let's get that

done in the next 14 days. If no additional discovery has been served, I'm understanding that the last intended written discovery request was served on May 27th. And I'm going to extend the deadline for that discovery to May 27th, so the written discovery deadline has now passed.

I am going to direct plaintiffs to respond to that discovery within 14 days and to provide their objections within 10.

Following the production of those documents, if defendant wishes to reopen Mr. Rothman's deposition, I'm going to ask defendant to file a motion that specifies when they intend to do that, and how long, how long they would like.

I will tell you, I do not intend to grant a significant period for that if it's requested. I'm going to ask that any privilege log be served with the production. I'm going to decline to add a new opportunity to reach summary judgment. If you decide after discovery that you think a supplemental motion for summary judgment by either party on that issue is appropriate, you'll have to ask Judge Merryday for that. But right now dispositive motion deadlines has passed, and I believe Judge Merryday is very intent on maintaining that deadline and maintaining the date for trial.

Is there anything -- I know that this is primarily logistics meaning, but while we're all together since the last time since I've seen you, you seem very regular guests. But

while we're all together, is there anything else that we should address?

MR. TITUS: Your Honor, I do have one thing that I'd like to mention. I'm not sure how to address it, when to address it, where to address it, but I read Judge Merryday's order.

THE COURT: Me too.

MR. TITUS: Of course you have. And it's pretty clear. It's in English. It's specific. Judge Merryday is well known for many things, and one of the best things he's well known for is being a very clear writer.

THE COURT: Right.

MR. TITUS: Clear writer. He's an excellent writer. People understand his writing very well. But, having said that, I see where we have either to agree to a scope or length of additional discovery. We couldn't agree so we are here with this hearing, or we're supposed to have this hearing which we're having.

But meanwhile in document 329-1, the defendants file their position on schedule modification. I don't know what they mean by schedule modification. It looks to me like it's a proposed schedule modification, plus a motion for extension of time for the trial, plus I don't know what else.

We know a lot more about Ms. Mainigi's trial schedule, but there's several places in here where the bank,

the defendants respectfully request that the Court set a trial date certain or the Court extend the trial date or the Court change the trial date.

Is that a motion or --

THE COURT: It's my understanding --

(Multiple speakers.)

MR. TITUS: -- well, see, what is that? Because it certainly isn't a proposed schedule for discovery. It has nothing to do with discovery.

THE COURT: Yes. So I took it as when Judge Merryday wrote his order acknowledging that defendant, certainly late in the game, is amending its pleadings to add a new claim, that that would inherently have some domino affect on the case scheduling.

It is my belief that the Court very much would like to maintain the trial schedule, maintain dispositive motion schedule. But I didn't necessarily find it crazy to think that if we're talking about the impact of the new pleadings on the discovery schedule that there might be some discussion of whether that would require any dispositive motions. In this particular case, it's above my pay grade. I can't offer advice. And so I'm not -- so I'm not going to (inaudible) that request, but I took that to be a fairly natural response to the request that we discuss the schedule in light of this new development.

But in any event, sort of putting aside intentions or, you know, the vehicle in which they were going to pick, I think, but correct me if I'm wrong, that we have addressed the adjustment that we need to make to the case management order. And I think we have a good sense of where we're going, understanding that there might be some surprises along the way as we get new discovery or new witnesses, but I think we've got a good idea here.

Does everyone have their questions answered about what our case management schedule is going forward?

MR. MAINIGI: The --

MS. EISEN: I'm sorry.

MR. MAINIGI: You can go ahead, Ms. Eisen, if -- You probably have better questions than me.

MS. EISEN: I'm sure that's not true, but before we move off of the schedule for discovery, just a few clarifying points, Your Honor.

So we have not built in an amendment to expert reports into a schedule. I hope it won't be necessary. To the extent that it is, I would just like to preserve the opportunity to come back and maybe ask for a date certain to amend those reports, or we can go ahead and schedule one now.

We'd like to move as expeditiously as possible and hope we don't need to do that, but in the event we do need to amend our expert reports based on these allegations, we'd like

to maintain at least an opportunity to do so.

THE COURT: So it is not immediately obvious to me that the new allegations and the new scope of discovery would trigger a requirement for an amendment for the reports.

If that becomes the case, the parties are welcome to move to request that, but for now we'll leave those deadlines where they are.

MS. EISEN: Okay. Thank you, Your Honor. And okay. Second to last point. On motions to compel, I hope they won't become necessary, but as Your Honor knows, we've been before you several times. To the extent motions to compel on any of the written discovery do become necessary, I was hoping we could build in a more expedited briefing schedule from those motions to the extent that we are filing a motion. If we could have a shorter period for response time, I think that will keep everything moving and allow us to alert the Court if we do feel like we need to reopen depositions as quickly as possible.

THE COURT: Here's what we're going to do. Our Court has a program called the IDEAL program. You all are not in that program, but in that program we have an expedited method of resolving discovery disputes. I'm going to -- for me and for me only. Judge Merryday has his own way, and I would never presume to give him some instruction on that. He will handle it perfectly. But for discovery motions, which I

feel confident will be referred to me, here's how we will resolve them.

The parties will file a joint motion for hearing and notice of discovery dispute. In that abbreviated document, what I hope to see are a list and with the language that I need of the relevant request or requests at issue; if relevant, any instruction associated with those requests; and, if relevant, any language in response or objection that we're fighting. I would like a brief synopsis of what the fight is.

I do not need a, you know, treatise on the concept of the need for that sort of discovery. What I'm really looking for is: *This is an objection to the request. This request is 10 years' worth of communication. This particular issue is, you know, spans three years or, hey, we requested communications. They didn't search personal devices, whatever it is. Or this is an objection to a deficient discovery response. We asked for X. We got Y.* They will clearly -- I just want a very brief synopsis of what the problem is, and then I want within the motion a list of three dates and times when the parties are mutually available for a hearing.

It does not matter to me if you'd like the hearing in person or on Zoom. We will accommodate either. But I just wanted to know which you prefer for that. And we will jump on -- we'll jump into a hearing and we will just talk through the issue and get you an answer.

I agree that at this point time is of the essence and finalizing discovery and getting the case ready for Judge Merryday, so I am happy to provide an abbreviated discovery resolution record.

MS. EISEN: Thank you, Your Honor. That's helpful and I think that will help us all.

Real quickly, and the last point before I turn over to Ms. Mainigi, is that the order within here called for the parties to file opening motions for summary judgment by April 30th. But we did not receive Judge Merryday's decision on plaintiff's motion to amend until May 11th, and we didn't receive the fourth now operative amended complaint until May 29th, so defendants have not had the opportunity to move for summary judgment on this new allegation and would request the opportunity to do so in advance of trial, because we do think we have a meritorious motion for summary judgment on these new allegations and we can eliminate that issue from trial all together.

THE COURT: I have it on good authority that I am not to grant any extension or motion for summary judgment today, but if the parties believe that they require the opportunity to brief summary judgment on this particular issue, you can file a motion. I do not know that that would be referred to me.

MS. EISEN: Thank you, Your Honor.

THE COURT: Anything else that we should address while we're all together?

MR. MAINIGI: Your Honor, this is Enu Mainigi. If I may perhaps just maybe improperly ask your advice. First of all, your response to Mr. Titus was exactly correct in terms of what our intentions were with filing, excuse me, what we filed. I think that the parties had been having conversations about that all day and it took a turn in the direction where there could not be agreement reached. So, that's number one. So thank you for addressing that.

Number two, I heard you loud and clear that Judge Merryday does not intend to change this trial setting, but I was hoping to get any advice you may have to offer as it relates to seeing if we could seek a date certain for the trial.

Just given the complication of other trials as well as, you know, the fact that we would need to, for trial, move to Tampa for a few weeks, secure hotel space as well as bringing numerous out-of-state witnesses, I was not sure if Your Honor had a perspective on whether that is ever done in advance of the trial. And it sounds like if it were done, it would be appropriate to file a motion before Judge Merryday.

THE COURT: So I have two responses to that. It is sometimes done with district judges that they will give a trial date certain. Generally, our practice in our district

is to put you on a trial month and to say you've got to be ready within that 24 or 48-hour notice period because certain judges have far more going on than they can fit into their schedule, so they sort of have to slot in cases as different ones resolve or continue. And, of course, they have criminal speedy trial requests.

I know that the option sometimes selected by parties in order to get a date certain trial is sometimes they consent to magistrate judge jurisdiction. Magistrate judges always give dates certain, so I cannot say whether Judge Merryday would be amenable to providing a date certain in this case. I can safely, at least as far as I can tell all of our litigants, if you really needed a date certain and you have, you know, interest, we can talk about what it looks like to consent to a magistrate judge. That sort of might get you a date certain.

So I can't speak for Judge Merryday. I do know sometimes he will give one, but that's really all the insight I have there on that.

MR. MAINIGI: Thank you, Your Honor. I appreciate that. For the record, we absolutely would consent to a magistrate judge.

THE COURT: Well, I can tell you a little bit. If the parties are interested in understanding the differences of how that works in our court, I'm happy to walk through it so

that you all can discuss and see if you would like that for your clients or not. Entirely up to the --

MS. EISEN: We're very --

THE COURT: It's entirely voluntary. Right? If any party does not want to consent to magistrate judge jurisdiction, you'll never be required to. It's not a majority rules or anything like that.

It's only when every single party would like to consent to magistrate judge jurisdiction. I will tell you there tend to be three differences in those cases. The first is we are a little bit past it, but when you consent to magistrate judge jurisdiction, in certain programs, you get that expedited method of discovery rulings. That can be true both in the discovery period, but also for some magistrate judges, and I'm one of them.

And that can be true with motions in limine as well. The parties can have an option to either fully brief every issue or to do it in sort of an expedited style where we schedule a hearing to talk through the issues and try to do that in a way that doesn't require you to expend a lot of time and money on briefing the issue in a formal way.

Also, it sort of reduces the period of time that we require to resolve those motions in limine. Right? Instead of your 25 pages, 2 weeks 20 pages, wait again for that extra 7 pages, it's just immediately ripe and we talk through it.

The second -- the second difference comes with trial administration. Right? District judges don't just give you same date certain. We are able to do that. We don't have the dockets of our district or colleagues, and we are just a lot more able to offer that.

The third and probably last important thing is, as you know, our district judges will voir dire panels for you so you'll submit your voir dire questions. They will ask them of your panel. You may or may not get a follow-up. I don't think magistrate judges care. So if you want to do your own voir dire, great. If you would like us to voir dire your panel district-judge style, great, happy to accommodate either way.

So those are really the differences in consenting to magistrate judge jurisdiction. Of course you have options of consenting entirely for everything that is going on in the case. Right? Every dispositive motion, every matter, every jury issue. Or you consent specifically for, you know, all matters pertaining to trial or whatever else, so that's an option there.

If the parties -- we'll never ask you directly, hey, would you like to consent to the Court? It doesn't matter. We just hope to be able to provide something that makes sense for the parties. There's no penalty or benefit outside of just the differences themselves of going either way.

So what we ask is that if the parties wish to consent, they just file a joint notice of consent on the docket. If any party does not wish to consent for any reason at all, it's no problem, you just keep riding the train.

So that's the magistrate judge option in our district. So feel free to think about it, talk about it, and if it make sense for your parties, then I'm happy to work with you in either proxy.

MR. MAINIGI: Thank you, Your Honor. We appreciate that explanation. This is very helpful.

THE COURT: Does anyone else have anything you want us to address here today? Very happy to do it while we're all together.

Okay. All right. Well, thank you all very much for your time. We will issue a written order with the rulings to these discussions, and I imagine we'll see you soon.

MR. KOPP: Thank you.

MS. EISEN: Thank you, Your Honor.

THE COURT: We'll be in recess.

(Court adjourned.)

UNITED STATES DISTRICT COURT )
)
MIDDLE DISTRICT OF FLORIDA )

I, SHARON A. MILLER, Official Court Reporter for the United States District Court, Middle District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript to the best of my ability of the digital hearing taken by digital recording taken in the above-entitled cause by the undersigned and that the transcript format is in conformance with the regulations of the Judicial conference of the United States.

/S/Sharon A. Miller, CSR, RPR, CRR, RMR
Official Court Reporter